Good morning ladies and gentlemen. I understand that in the cases to be argued for today, counsel is delayed in the first case on our calendar, Donnie v. Donnie International, so we're going to put that at the end of the calendar and we'll proceed in order otherwise. Evanston Insurance v. Kramer & Associates. Good morning. May it please the court, Mary Massaran on behalf of Evanston Insurance Company, formerly Essex. Evanston seeks a reversal of the district court's order overturning a jury verdict in its favor on the basis of the statute of limitations. This amounts to reversible error because the record was sufficient to support the jury's finding that the statute was told a conspicuously fact-bound determination given that the jury found William Kramer & Associates special relationship requiring it to inform Essex of the existence of a mortgage on a condominium complex. Your position is that the purpose for which the relationship in which the defendant had been hired to explore everything with respect to the property and to make sure that there were no interests continued even after the insurance of anything that happened such as its having received an inquiry about the payment even before the problem arose and after the problem arose it went back to searching its files, it told the defendant again incorrectly that there was no mortgage, it billed the plaintiff for its time, the plaintiff paid for its time, it called the plaintiff, our client, and you're saying all that is that the relationship continued. Is that right? That's our position. And it recognized explicitly, recognized an obligation in deposition. The defendant testified that it had an obligation to advise the plaintiff of anything that came up. That's absolutely correct, Your Honor. Let me ask you about the duty so that I'm clear on it. After the last payment was made, which the district court thought ended the duty, what duty is it that you think continued? Because Connecticut law in Flannery talks about a continuing course of conduct requires evidence of breach of a duty that remained in existence. So what's the duty remaining in existence? The district court offered instructions on that duty which were legally correct and have not been appealed. Answer my question. Yes. And the duty arises out of the relationship of being an adjuster. What's the duty? The duty is to act as a proper adjuster, which is to provide information, to gather information, to respond to inquiries related to the insurance coverage issues arising out of this loss. It was the jury instructions that, as you say, were not objected to as a duty of care. Correct. All right. Once the adjuster, once the last payment had been made, though, what was the adjuster's duty thereafter? The adjuster had an ongoing duty, and there was testimony- To do what? To inform Evanston or Essex when the subpoena questions came to provide additional information. Is that a duty of care? It is a duty of care because- It doesn't Connecticut . . . I mean, it is at least a duty of care, but doesn't Connecticut law define the duty as a fiduciary one? It does, absolutely, and the jury was properly instructed on that. Let me just insert something with respect to Judge Radji's question because Judge Radji, quoting from the case with Flannery, spoke about a breach of a duty. And as I understand it, there are two different branches that can sustain the tolling. One is a new episode of misconduct, which is what Judge Radji was quoting about, the breach of a duty. The other is simply the continuation of the duty. So the particular phrase that, if I understand, was that a quotation from the opinion? It sounded to me like it was a quotation from the opinion, and it's talking about . . . But that particular sentence is talking about there must be a breach of the duty. That's the second branch, an episode of misconduct, which is a different thing from simply the continuation of the relationship. Right, that's absolutely true, and Essex was obligated to prove either of those, and the jury found it had, and there is evidence in the record on both, as long as that fiduciary relationship is continuing, then that gives rise to the ongoing duty of care. And in this case, the jury could properly find it continued based upon the testimony of both representatives from Kramer and from Essex that they had an ongoing relationship and that they were continuing to work together. And in fact, Essex hired an attorney to represent the Kramer representative during the depositions. Kramer continued to bill Essex. So that relationship continued. Besides the deposition testimony of Mr. Martin, was there a written contract or engagement letter between Essex and Kramer? There's no written contract that is in the record, Your Honor, no. I'm going to ask to go back to my question because it's not one, and I have a series to ask you to make sure I understand your position on this. The language I quoted from Flannery was that continuing course of conduct requires evidence of the breach of a duty that remained in existence after commission of the original wrong related thereto. That duty must not have terminated prior to commencement of the period. Then as Judge LaValle pointed out, the court said, where we have upheld a finding that a duty continued, there had been evidence of either a special relationship giving rise to such a continuing duty or some later wrongful conduct. My concern, to get right to the bottom line, is that what you're saying here is that the adjuster had basically a continuing duty to indemnify once it had made a statement about what the other mortgages were, once it had done an adjustment. And I didn't understand that to come within here. Am I misunderstanding it? Because that's the problem I'm having. What's the continuing duty here? The continuing duty. I mean, you're basically saying that having not gotten it right at the start and having let you pay out, when that gets discovered, they have a duty to indemnify you. They had a continuing relationship that gave rise to the duty because it was fiduciary. The duty was to act in an appropriate way. And in this case, the breach of the duty was the failure, the omission of disclosing. My question to you is, is it because they had a continuing relationship that their breach of the duty before you paid out remains in existence? Or is there some continuing duty that they had that was breached after you paid out? I'm not sure I fully understand the question. Well, I'm not sure I understand what your theory of a continuing duty is. And that's why I want you to help me out. Let me try, Your Honor. Under the special relationship prong, as long as that special relationship continued with respect to the same general event. No, to such a continuing duty, a special relationship between the parties giving rise to such a continuing duty. Correct. So as long as that special relationship was continuing, and there are any number of cases that make this point, then that duty arises out of the relationship. So the jury was asked to consider, did this relationship continue? And the jury found that it did. It's not like Flannery because in Flannery, there was a written contract with a specific termination date. And also in Flannery, the harm, the injury was complete. This is like those other cases which were cited and discussed in our brief, where it's a sort of cumulative harm that's ongoing over time. You would agree that there's nothing in Connecticut law that really answers the specific question in front of us. Would you agree with that? I would. I think there are very close analogies, but not exact. And this is insurance, which is a specialty of the Connecticut Supreme Court. Would you agree with that? I don't know that to be a fact, but I would not disagree with it. All right. Why don't we hear from Judge Radji. May I just offer, I wonder whether you would think this was an appropriate answer, supplemental answer to the question Judge Radji asked, which was that before the insurance company paid out, the defendant had a duty to investigate thoroughly to determine, to find and discover and advise the insurance company of all possible financial interests with respect to the property that might affect the insurance company's duties to pay, who it should pay, how much it should pay, so forth, how it should allocate them and so forth. And that duty continued, although it seemed at a time to no longer be relevant after the insurance company paid, the defendant received an inquiry, how did you make your payment? It recognized its obligation, tell my client right away about this, about anything. It ripened into a claim by the mortgagee that it had not been respected. At that point, the duty was, as before, to test whether to see, is this a valid claim? Is there really a mortgage? Is there some deficiency in the claim by the claimed mortgagee to continue to do the same things that it would have been obligated to do before? It at first advised the insurance company that there was no mortgage, once again repeating the same error as before, which might arguably satisfy the new harm, the new breach, but regardless of whether there was a new breach, regardless of that, the relationship under which the defendant was obligated to search thoroughly the matter of the damaged property and see who had an interest that needed to be respected continued. Does that . The argument for a continuing duty is lower. This was a commercial transaction. Was the project completed? Was the engagement completed? Your honor, flannery is the closest case, as Judge Hsieh indicated. Is the project completed? William Kramer was hired to adjust the loss. They adjusted the loss. They advised the client Essex as to what they found. Essex wrote a check in 2007 for its policy limits. The mortgage had been not found at that point. The concern I have with your attempt to say that the relationship ended with their payment, though, is that it got revived. It got revived when these inquiries were made, and you characterized yourself as having a client during that time. You were paid by them for your actions. You were answering questions and providing materials about something. Why isn't it fair to say that that revived the duty you had to have done that work with due care? Because, your honor, and I think that's a critical point, the adjustment work was done in 2007. There was one follow-up question, as your honor indicated. We're not talking about a new wrong. We're talking about whether a relationship then continued that gave rise to that duty of care in that regard having continued. As counsel just said, their whole litigation posture may have been quite different if they knew that their adjuster had missed a mortgage. And you were answering questions for them in this process and not disclosing that, yes, you had goofed. There was no litigation at that point, your honor. No, but it's important because what happened was Kramer adjusted the loss and closed its file, and Mr. Essex, likewise, wasn't following it. In 2009- The whole inquiry was at the bottom about whether or not this second insurer had obligations, and that depended very much on whether your adjustment work was right. So basically, you're the party in all of these inquiries who should have the information but for your negligence, and you're not disclosing it. Your honor, the file's closed, and in 2009, a subpoena comes in. There's an obligation to respond to the subpoena. That doesn't mean your initial work continues. Any citizen has an obligation to respond to a subpoena. Think of the analogies. An auditor, why are you being paid? You were paid for that work by your client. You weren't an average citizen. You were operating for a client. Yes, your honor. It was your duty to the client at that point. And as Judge Shea said, in 2009, there'd be a duty to respond with due care to the subpoena. And if that- But your client said that we had an obligation to advise our client of any developments. And so, and billed the insurance company for its time in the work, for appearing in the subpoena, they weren't acting. Your client was not acting as an independent entity, not in a client relationship with the insurance company. It was regarding its, you expressly acknowledged an obligation to let them know about, you're talking about, yes, they had an obligation to answer the subpoena. I'm not talking about that. I'm talking about your client's acknowledgement of an obligation to advise the insurance company of any information that came to them. And your honor, what he said was different and is correct. And that is, and that's what the Connecticut Supreme Court has said. In Newhouse, they say the critical fact is knowledge. If we learned, if our client learned that there was a mistake, there's an obligation to tell the client. That's true for a lawyer, it's true for an accountant. So let me ask you this. Supposing that the adjuster had discovered when this problem came up. Supposing that the adjuster came up, discovered that the claimed mortgage interest was invalid for some reason. That that mortgage had been satisfied or a court had ruled in another matter, that that mortgagee no longer had the right to this or something or other that would help the insurer, its client, to defend against this claim. Wouldn't it have been the obligation as recognized explicitly to tell, to pass this beneficial information on to the insurance company? If you have actual knowledge. That's what the Connecticut cases say. And there isn't- If you have something short of actual knowledge, well, there's strong indication here that this is satisfied. But I would have to go further to confirm it, so I'm not going to tell them. I'm not going to tell them because I don't have actual knowledge, I have just a strong indication. Newhouse says actual knowledge is the key. The point though is to come back to duty, because there was no duty on the part of Kramer to be looking for more information about its adjustment. And when it got this subpoena, it was compensated for its time in responding for the subpoena. If it didn't do that properly. So, and your view is that that is a duty to just respond to the subpoena and not any duty to the insurance company? Well, no, no, no, it's a duty of the insurance company, but what- How do you describe that duty? To exercise due care in responding to the subpoena, it's not the key. This is what Judge Shea said, and it's the key. It is not a continuation of the adjustment, and there's an obligation to do it properly. But assume that, we don't think it's a related wrongful act, but assume that it is. It was in 2009, and so it doesn't matter. Because if the clock resets in 2009, the statute of repose has still expired. And so you can assume, assume that in 2009 they committed a wrongful act. And assume it's related to the initial adjustment. It doesn't affect the outcome, as Judge Shea said, because if you restart the clock in 2009, the statute of repose still expires. But this went to a jury, and the question could very well have been for the jury, and the answer that they gave was that they didn't view your duty so narrowly at the time of your responding to these inquiries. You were the adjuster, and they viewed your duty as one to have at least the information in your own files inform all your decisions. I mean, you may not have been under a duty to go out and conduct a new inquiry. But for you to give answers and to provide impressions in your responses that were not consistent with what was in your own files could have been viewed by the jury as negligence. And the breach of a duty to your client. Two answers, Your Honor. The first is whether there's a duty as an issue of law for the court. And the second is, if we look at Flannery- The scope of the duty here was in dispute. You're disputing what you had to do. Well, I don't think there can be any reasonable dispute that both parties, the adjustment was complete, the money was paid out, the files were closed in 2007, the job was done. If you look at, in Flannery, you had an attorney there who committed reprehensible conduct. He's sitting there knowing he had a conflict. His client comes to him and says, IRS is questioning my position. The lawyer refers him to someone else. And the Connecticut Supreme Court said still that there's no duty to disclose once the engagement's done. Your adversary pointed out, am I not correct, that your adversary pointed out that in Flannery, there was a contract that explicitly brought the duty and the relationship to a close as of a specified date. Am I correct about that? There was, Your Honor, an engagement letter that gave an end. And as Judge Chase said, the point here is that no reasonable person could find this engagement to adjust continued. And if it were found here, it would create a discovery rule. Is there a single Connecticut case that has generally or involves generally these issues in the context of an insurer and its adjuster? Not that I'm aware of, Your Honor. I think as Judge Chase said, Flannery is the most recent and probably the most informative. The medical cases are the best analogy. And you mentioned the statute of oppose. Would you agree that if after 2007, Essex had paid Kramer to review its files to ensure that Kramer hadn't missed any mortgages, that request would toll the statute? Well, it would be a duty to exercise reasonable care, and it sounds like it would be related, so it would be a related wrongful act. And the key point, I think, if in 2009, if you treat the subpoena as exactly that, there still is no, if that revives the statute, the period only begins to run again. And I do want to come back- Let me suggest a difference between the attorney example that you gave and this one. If I understood the attorney example there, the attorney wasn't being paid by the client at that point any further. Is that right? I assume that's right. And that's the problem I have here. Once your client is taking, once your client is taking its client's money to participate in this, in responding to the second insurer's inquiries, isn't there a duty for you to provide anything that you know that's material? And your failure to provide it is negligence. You were hired as an adjuster, you're now being questioned as an adjuster about what knowledge you had of certain things. And the fact that you didn't have actual knowledge is only because of your own negligence. And that, Your Honor, we were paid to respond, to the time in responding in 2009. Right, and the expectation of your client was that you would provide the material information. And assume there's a breach of duty in 2009, we were paid for our time responding to the subpoena. We got it wrong. As Judge Shea said, restart the clock in 2009. Statute of repose still expires. We were not paid one penny after 2009 until the second subpoena in 2012, and there was no wrongful act there. All right, thank you. Would you, would you, just accord me one moment. Would you have any objection to certifying the question in the context of the relationship between an insurance company and its adjuster of what, whether the duty of care in connection with adjusting a loss is the same as the duty of care to the client. Subsequently in responding to a subpoena. None whatsoever, I think would be a good idea. And I think, as Judge Shea said, the medical cases are the best analogy. And if you think about it, a doctor continuing to see a patient, if it's not for the same condition, and the doctor doesn't know he missed a terminal, potentially terminal illness. That doctor has no continuing duty. How can it be that an insurance adjuster does? But it's life and death. That may be some different policy. Yeah, Your Honor, we would welcome that. Thank you. Thank you. Ms. Masseron. I really have very little to say on rebuttal. I would point the court to the case of Van Liner also as a good illustration, supportive of our position. And it seems to me the court understands, I know we've gone over before. With respect to certification, I certainly would not have a problem with that. I think the case is strong for a reversal here, which I'd love to save my client the time and money of additional proceedings, but I understand why that would make sense. Thank you very much. Thank you.